UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GD Group USA Company, ) | |
| ) | |
| Plaintiff and Counter-Defendant, ) | |
| ) | Case No. 23 C 176 |
| v. ) | |
| ) | Hon. Jorge L. Alonso |
| Medmarc Casualty Insurance ) | |
| Company, ) | |
| ) | |
| Defendant and Counter-Plaintiff. ) | |

**ORDER**

Before the Court is Defendant and Counter-Plaintiff Medmarc Casualty Insurance Company's ("Medmarc") motion for summary judgment against Plaintiff and Counter-Defendant GD Group USA Company ("GD"). Medmarc's motion is granted. [80]

**Background**

In its underlying complaint against GD, Alcon made the following allegations, which the Court recites without concluding or implying anything as to their veracity or accuracy.

In 2020, GD began supplying medical gowns to Alcon, which provides surgical equipment to ophthalmologists. Alcon included the gowns in Custom Paks ("packs") it sold to its surgical customers. These packs included a sterile surgical gown and additional items needed by ophthalmologists for surgery.

Beginning in January 2021, Alcon began to receive complaints from customers that mold was present on the paper pull tags of certain GD surgical gowns, which are meant to be used in sterile environments. Alcon obtained samples of the gowns from its customers, and through testing

1

confirmed the presence of mold residue on the pull tags. The only gowns with mold issues were supplied by GD.

In January 2021, Alcon informed GD of the complaints regarding mold residue on GD gowns. GD acknowledged the issue. Around February 1, 2021, Alcon informed the FDA of the complaints it had received. Before receiving a response, Alcon began to recall and destroy the packs with GD gowns in lots identified as having mold issues. Alcon then sent full replacement packs to these customers. At the same time, Alcon enhanced inspection efforts by opening packages of GD-supplied gowns, unfolding them, and examining them. If it found mold on a gown, it would destroy it. If it found no mold, it would repackage the gown for sterilization and inclusion in packs.

Alcon continued to receive customer complaints about GD gowns and found that the mold issue was more extensive than GD had previously identified. Alcon continually updated the FDA regarding new customer complaints relating to GD gowns and Alcon's expanded efforts to obtain and destroy packs and to inspect gowns which had not yet been packaged. These expanded efforts led Alcon to identify even more gowns with mold issues.

Eventually, due to Alcon's market share and general shortages caused by the Covid-19 pandemic, Alcon recognized that if the effort to obtain packs became large enough, there would be an impact on the availability of ophthalmology surgeries throughout North America. Around May 4, 2021, Alcon met with the FDA and proposed a field correction through which Alcon would send customers with potentially impacted packs standalone replacement gowns, along with instructions to remove the GD gown and dispose of it without unfolding it, which would allow the customers to continue to use the other non-gown components. While awaiting FDA approval for

the field correction, Alcon continued to obtain and destroy potentially impacted packs.

The FDA approved this field correction around May 24, 2021. Several Alcon customers would not accept it, however, leading Alcon to send those customers replacement packs, rather than just replacement gowns. Eventually, Alcon began to purchase its replacement gowns from other vendors due to GD's inaccurate statements regarding the extent of the issue and GD's lack of a plan to resolve the issue going forward. Ultimately, GD sued Alcon for this decision. Alcon filed counterclaims for breach of contract and breach of warranty against GD. Alcon's counterclaims allege that GD breached contracts and warranties through GD's provision of the moldy gowns, and claim damages for (1) the cost of the packs that had to be destroyed, including the cost to replace the destroyed non-gown components, (2) the cost of the FDA recall and field correction, (3) the cost for replacement gowns, (4) loss of production, (5) reputational harm, (6) the purchase price of GD gowns, and (7) other associated costs.

GD filed this suit, alleging that Medmarc has a duty to defend GD because the claims asserted potentially fall within the parties' insurance policy.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court views all the evidence and draws all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton*

*v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Further, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## Discussion

A duty to defend arises when the allegations in the underlying complaint for which defense is sought fall potentially within the coverage of the insurance policy. *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). When the policy potentially covers the claims asserted, a court must consider whether exclusions in the policy limit coverage. *Acuity v. M/I Homes of Chicago, LLC*, 234 N.E.3d 97, 105 (Ill. 2023). If the policy does not potentially cover the asserted claim, "the analysis is complete." *Id.*

In considering the underlying complaint, courts do not consider the allegations' "veracity, what the parties know or believe the alleged facts to be, the outcome of the underlying case, or the merits of the claim." *Id.* at 581 (citing 14 Couch on Insurance § 200:20). Instead, the "focus is on what has actually been alleged in the underlying action rather than what hypothetically could be alleged." *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017); *see also Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 812 (7th Cir. 2010). That said, the "underlying complaint must be liberally construed in favor of the insured [with] any doubts . . . resolved in favor of the insured." *Connecticut Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 351 (7th Cir. 2003). Further, courts "read the underlying complaints as a whole to assess the

true nature of the allegations." *Lexington Ins. Co. v. Chicago Flameproof & Wood Specialties Corp.*, 950 F.3d 976, 980 (7th Cir. 2020).

The Court notes that the parties have submitted evidentiary materials that go beyond Alcon's counterclaims against GD and the insurance policy between GD and Medmarc. The parties agree that Illinois law applies to the current dispute. In determining whether a duty-to-defend arises under Illinois law, courts "look[] only within the four corners of the insurance policy and the four corners of the complaint for which defense is sought." *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579-80 (7th Cir. 2021).

GD argues that a broader set of materials should be considered, while Medmarc contends it submitted additional materials only to contextualize those submitted by GD. In support of its argument, GD cites to three inapposite cases that do not concern a duty to defend, let alone discuss the standards applicable to summary judgment in such a case. GD has not argued that this case concerns "unusual or compelling circumstances" which justify departure from the general rule to consider only the underlying complaint and the policy, or why, if the situation does justify departure, it might permit the Court to consider materials apart from other pleadings in the underlying action. *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1022 (Ill. 2010). The Court will not endeavor to construct this argument for GD. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (district courts need not "research and construct legal arguments for parties"), and will not consider extraneous materials for purposes of this order.

A.  **Interpretation of the Policy**

The parties agree that the primary provision of the policy at issue in this litigation is:

49. Property Damage means:

5

>a. physical injury to tangible property other than **Your Product** or **Your Work**; or
>
>b. loss of use of tangible property, other than **Your Product** or **Your Work** that:
>
>>(1) has been physically injured; or
>>
>>(2) incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous and such property cannot be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.

(ECF No. 80-8 at 26) (emphasis in original).

Under Illinois law, the interpretation of an insurance policy is a question of law. *Citizens Ins. Co. of Am. v. Wynndalco Enterprises, LLC*, 70 F.4th 987, 995 (7th Cir. 2023). When construing an insurance policy courts "read the policy as an ordinary, reasonable layperson purchasing such a policy would read them" unless there is "some indication that the policy's terms were intended to have a technical connotation." *Id.* at 995-996. The Court finds no indication from the policy itself or from the argument submitted by the parties that these terms are intended to have a technical connotation. GD contends that the policy provisions at issue here are ambiguous, but, as discussed further below, the Court finds the policy to be unambiguous. As such, the Court gives the terms their ordinary meanings, and need not turn to trade usage or expert opinions regarding the meanings of the terms.

    **i.**    **Section 49 of the Policy**

The majority of the words in section 49 are so clear that they need no explanation. The one potential exception is the phrase "physical injury to tangible property," but even this phrase is capable of interpretation by a layperson. The Illinois Supreme Court has held that "physical injury to tangible property" occurs when the property is "altered in appearance, shape, color or in other material dimension," but not when "property suffers intangible damage, such as diminution in

6

value as a result from the failure of a component." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 496 (Ill. 2001).[1] The Court sees no reason why a "reasonable layperson" would give that language a different interpretation in this case. *Wynndalco Enterprises, LLC*, 70 F.4th at 995-996.[2] As such, the provisions of the policy concerning physical injury to tangible property potentially apply only if there is physical damage to tangible property other than GD's gowns.

**B.      GD's Arguments Under Sections 49(a) and 49(b)(1) Fail**

Medmarc argues that it has no duty to defend under the provision of the policy concerning physical injury to the tangible property of third parties because such damage is not alleged in the underlying complaint. GD argues in response that (1) the Court should consider whether later evidence in the case could show contamination of non-gown products, (2) the underlying complaint does not state that such contamination never occurred, (3) certain allegations in the underlying complaint show that contamination did in fact occur, and (4) mold should be presumed to damage the other contents in the packs. The Court finds GD's arguments unpersuasive.

**i.      There Is No Duty To Defend Based On The Potential Of Future Evidence**

GD first argues that no specific allegations of physical injury to third party property need be identified in the underlying complaint because of the possibility that at a later stage "evidence will be produced that the initial field correction was insufficient because there was . . . actual

---

1 The Court does not understand GD's repeated argument that the use of a standard dictionary by the Illinois Supreme Court is "improper expert opinion." (ECF No. 84 at 11, 13). Indeed, the Court's "task is to resolve the issues as the Illinois Supreme Court would." *Cornice & Rose Int'l, LLC v. Acuity*, No. 23-1152, 2024 WL 4880102, at *2 (7th Cir. Nov. 25, 2024).

2 The Illinois Supreme Court decision in *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 932 (Ill. 1991), contrary to GD's position, does not undermine this construction, but merely provides an example of where installation of a product may cause physical damage to tangible property under this definition, through the alteration in a material dimension by the contamination of asbestos fibers in the building and its contents more generally.

contamination of non-gown components[.]" (ECF No. 84 at 4.) GD cites *Pekin Insurance*, 930 N.E.2d at 1022, but that case is inapposite. There, the Court found that unusual circumstances compelled the Court to depart from the ordinary rule and consider more than the underlying complaint and the policy at issue because of the specific facts of the case. Specifically, where the insured was required to prove he was acting in self-defense to obtain coverage under the policy, the plaintiff in the underlying tort action would be unlikely to set forth allegations supporting the insured's self-defense. *Id.* at 1022. The case does not stand for the position that the mere possibility of future evidence giving rise to coverage triggers a duty to defend. In fact, such a contention is contrary to the law. *Scottsdale Indem. Co. v. Vill. of Crestwood*, 673 F.3d 715, 721 (7th Cir. 2012) ([A]n insurer's duty to defend his insured depends on what the complaint alleges rather than on the facts that emerge over the course of the litigation and that might or might not give rise to a duty to indemnify[.]"); *In re Country Mut. Ins. Co.*, 889 N.E.2d 209 (Ill. 2007) ("[T]he duty to defend is gauged by the allegations of the complaint, what the facts subsequently show is immaterial."). As such, the Court finds this argument unconvincing.

    **ii.**  **The Underlying Complaint Need Not Affirmatively Foreclose Coverage**

GD argues that the underlying complaint does not affirmatively state that no contamination ever occurred with regards to non-gown components. Further, it does not state that the destruction of the packs ever stopped, which, in its view, implies a reason for the packs to be destroyed, namely, that non-gown components were contaminated with mold. But this amounts to an argument that silence triggers a duty to defend, which the Seventh Circuit has rejected. *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 99 F.4th 1035, 1044 n.3 (7th Cir. 2024). A complaint need not allege facts that affirmatively foreclose coverage to avoid triggering a duty to defend. *Id.*

The Court will not construe silence on this point as a factual allegation which gives rise to the potential of coverage.

### iii. The Underlying Complaint Does Not Demonstrate a Possibility of Coverage

Next, GD argues that the underlying complaint implies that Alcon abandoned its field correction, and that certain customers refused to comply with Alcon's field correction, which shows that products other than the gowns must have been contaminated. Both arguments fail.

First, the Court is not persuaded by GD's argument relating to the alleged abandonment of the field correction. The underlying complaint contains no allegations that the field correction was abandoned due to damage to components other than gowns. GD cites paragraph 42 of the underlying complaint, but that paragraph only states that that Alcon began purchasing replacement gowns from other vendors due to issues with GD's reliability and ability to solve the issue of mold on its gowns. (ECF No. 80-6 ¶ 42).

In addition, even taking as true and liberally construing certain customers' refusal to participate in the field correction in favor of GD, that in and of itself is not evidence that the tangible property of third parties was physically injured because it is not an "explicit factual allegation[] that potentially fall[s] within policy coverage." *Walsh Constr.*, 99 F.4th at 1043 (quotations omitted). *Hartford Fire Ins. Co. v. Thermos L.L.C.*, 146 F. Supp. 3d 1005 (N.D. Ill 2015) is instructive. There the court found sufficient allegations as to third party property damages, noting it was a "close call" where the thrust of the specific claims was related to defects in bottles sold by the insured. *Id.* at 1014. However, in reaching that conclusion the court noted that the underlying complaint alleged specific facts supporting the existence of property damage, including the fact that the leaks in the bottles "soaked" other items in diaper bags and led to puddles of milk

9

and sticky juice. *Id.* Here, there are no similar allegations of physical damage to non-gown components, and any resulting claims are at most implied and insufficient to demonstrate a possibility of coverage. *Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 644 (7th Cir.2007) ("Implied claims that are not specifically alleged can be ignored.").

The Court's opinion on this point is bolstered by reading the underlying complaint as a whole. In doing so, it is clear that Alcon's grievance relates to mold on GD's gowns, and not on other materials. For instance, (1) the underlying complaint never mentions customer complaints of mold on non-gown materials or gowns provided by those other than GD, but cites to customer complaints regarding moldy gowns specifically (ECF No. 80-6 ¶¶ 21, 26, 35, 44); (2) Alcon specifically alleged that the gowns were not supposed to have mold, but did, including through photographs and references to testing, without referencing any non-gown products in a similar manner (*id.* ¶¶ 22-25); (3) Alcon described the issue to the FDA as mold on GD gowns (*id.* ¶¶ 31, 35, 38); (4) the mold was only visible when the gowns were unfolded, and customers could, with the FDA's approval, obtain replacement gowns without replacements of the remainder of products if they disposed of the gown without unfolding it (*id.* ¶¶ 33, 38-39, 41); (5) inspections by Alcon and its vendors revealed mold on GD gowns but are not alleged to have revealed mold on other equipment (*id.* ¶ 36); and (6) the gowns were alleged not to meet the standards set forth in the cited agreements which concern GD's products, and not the products of others (*id.* ¶¶ 12, 18, 20).

All of this makes it abundantly clear that Alcon is not alleging physical contamination of non-gown products by the GD gowns, but instead that GD's provision of moldy gowns violated the agreements and warranties between GD and Alcon. To be clear, the Court is not weighing the evidence and reaches no conclusion as to what the evidence in the underlying suit is likely to show;

it simply concludes, reading the underlying complaint as a whole, that Alcon has alleged only that GD sold it defective gowns, not contamination of non-gown products. *See Chicago Flameproof & Wood Specialties Corp.*, 950 F.3d at 983 (affirming summary judgment for insurer where the policy covered only accidents despite language of negligence and ordinary care in the underlying complaint, because reading the underlying complaint as a whole made clear the alleged injury stemmed from intent)*; Lemko Corp. v. Fed. Ins. Co.*, 70 F. Supp. 3d 905, 914 (N.D. Ill. 2014) (refusing to consider a conclusory allegation of property damage when the allegation merely repeated statutory language and was "inconsistent with the larger complaint and the detailed allegations concerning the insured's conduct." (quotations omitted)).

   iv. **Mold Does Not Cause Per Se Physical Damage**

  To the extent that GD argues that mold should be presumed to cause a physical injury to other tangible property, it is wrong. In support of this argument, GD cites *Wilkin Insulation Co.*, 578 N.E.2d at 932. However, that case is inapposite because the Illinois Supreme Court found "the underlying complaints allege that the buildings and the contents therein were contaminated by toxic asbestos fibers" and that this meant that "the underlying complaints allege physical injury to tangible property." *Id.* As such, the Illinois Supreme Court did not obviate the need for the underlying complaint to allege physical injury to tangible property; rather it found that it had been properly alleged. As discussed above, the underlying complaint does not allege that the gowns caused other materials to be contaminated.

  For the foregoing reasons, GD has failed to demonstrate even the possibility of coverage of physical damage to tangible property under sections 49(a) or 49(b)(1) of the Policy. As such, Medmarc has no duty to defend under these provisions.

C. **GD's Argument Under Section 49(b)(2) of the Policy Fails**

GD also argues that there is a possibility of coverage under section 49(b)(2) of the Policy because the non-gown components suffered a loss of use. Section 49(b)(2) defines Property Damage to include:

> loss of use of tangible property, other than **Your Product** or **Your Work** that . . . incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous and such property cannot be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.

(ECF No. 80-8 at 26) (emphasis in original).

Because the underlying complaint contains no allegations that the there was a loss of use of property that "incorporates" the gowns, GD's argument fails. GD makes no clear argument as to why the allegations in the underlying complaint lead to the conclusion that the gowns were "incorporate[d]" into other "tangible property" in some way that could not be remedied by the removal of the gowns. The closest it comes is to make a passing reference to trade usage and practice and the need to consider expert testimony. The Court disagrees with GD's argument that there is terminology here that requires expert testimony to interpret. At no point does the underlying complaint allege that the placement of a gown into a pack incorporated the gowns with the other materials sufficiently such that they were an indistinguishable whole. *Incorporates*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/incorporate (last visited January 20, 2025) (defining incorporate as "to unite or work into something already existent so as to form an indistinguishable whole"). Instead, the underlying complaint establishes that the gowns could be removed from the packs and simply replaced by another gown. (ECF No. 80-6 ¶¶ 38, 41-42.)

**D.     GD's Other Miscellaneous Arguments**

In passing, GD argues that the carveout from an exclusion relating to coverage for "Your Work" means that its work is covered under the Policy. This argument is misplaced because GD has not identified nor can the Court find a provision of the Policy that its claims fall within, even assuming the exclusion does not apply. *Ryerson, Inc. v. Fed. Ins. Co.*, 796 F. Supp. 2d 911, 914 (N.D. Ill. 2010), *aff'd*, 676 F.3d 610 (7th Cir. 2012) ("[A]n exclusion is only relevant if the claim first falls within the insuring agreement." (citing *Continental Cas. Co. v. Pittsburgh Corning Corp.,* 917 F.2d 297, 300 (7th Cir.1990))). As such, this argument does not preclude summary judgment for Medmarc.

Further, as for GD's apparently separate standalone argument, comprising one sentence that "[d]enying coverage would also violate consumer fraud statutes by creating confusion as to terms," (ECF No. 84 at 15), the Court fails to see from the sources cited or the sentence itself how this argument is relevant to Medmarc's duty to defend. If anything, this argument regarding consumer fraud appears to be a separate cause of action against Medmarc, not a separate basis for finding a duty to defend. As such, this argument does not preclude summary judgment for Medmarc.

**E.     Policy Exclusions**

Because the Court has concluded that Medmarc has no duty to defend GD on the basis that the loss is not covered by the policy, it declines to reach Medmarc's alternative arguments regarding policy exclusions. *M/I Homes of Chicago*, 234 N.E.3d at 105.

13

**Conclusion**

For the foregoing reasons, Medmarc's motion for summary judgment [80] is granted.

**SO ORDERED.**            **ENTERED: January 31, 2025**

_____
**HON. JORGE ALONSO**
**United States District Judge**